# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2276

_____

United States of America

*Plaintiff - Appellee*

v.

Michael Allen Voelz

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: February 15, 2023
Filed: May 8, 2023

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

Michael A. Voelz pled guilty to a drug offense in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The district court[1] applied a two-level sentence enhancement for possessing a dangerous weapon in connection with a drug offense

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

under U.S.S.G. § 2D1.1(b)(1), while declining safety-valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. The court sentenced him to the statutory minimum of 120 months in prison. Voelz appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Two confidential reliable informants ("CRIs") made four controlled purchases of methamphetamine from Michael A. Voelz at his farmstead. The CRIs saw firearms there. A search warrant found 20 firearms, a silencer, and a pipe bomb there. Two of the controlled purchases occurred inside a shed, which had three of the firearms (a handgun and two rifles), the pipe bomb, pipes with meth residue, scales, and other drug paraphernalia. A garage there had most of the meth and a locked safe with 15 of the firearms. Voelz's truck had two loaded firearms (one with a silencer) and drug paraphernalia.

Voelz pled guilty to a single count of possession with intent to distribute 500 grams or more of a substance containing a mixture, or a detectable amount, of meth in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The Presentence Investigation Report recommended a two-level enhancement for possessing a dangerous weapon in connection with a drug offense pursuant to U.S.S.G. § 2D1.1(b)(1). The district court applied the enhancement and declined to grant safety-valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.

Voelz appeals, alleging error in (i) enhancing his sentence, (ii) denying safety-valve relief, (iii) assigning him the burden of proof for the safety-valve requirements, and (iv) applying these sentencing guidelines after *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022).

## II.

Voelz argues that the district court erred by enhancing his sentence under U.S.S.G. § 2D1.1(b)(1). "This court reviews de novo the district court's interpretation of the Guidelines and reviews for clear error, its application of the Guidelines to the facts." *United States v. Garcia*, 772 F.3d 1124, 1125 (8th Cir. 2014).

"Federal Sentencing Guideline § 2D1.1(b)(1) provides for an increase of two levels to a person's base offense level for certain drug-related crimes 'if a dangerous weapon (including a firearm) was possessed.'" *United States v. Payne*, 81 F.3d 759, 762 (8th Cir. 1996), *quoting* **U.S.S.G. § 2D1.1(b)(1)**. "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Garcia*, 772 F.3d at 1125, *quoting* **U.S.S.G. § 2D1.1 Application Note 11(a)**.

"The enhancement poses a very low bar for the government to hurdle." *Id.* "The government must simply show that it is not clearly improbable that the weapon was connected to the drug offense." *United States v. Peroceski*, 520 F.3d 886, 889 (8th Cir. 2008). This requires "a preponderance of the evidence that there was a temporal and spatial nexus among the weapon, defendant, and drug-trafficking activity." *United States v. Escobar*, 909 F.3d 228, 240 (8th Cir. 2018). "This exists when the weapon was found in the same location where drugs or drug paraphernalia were located or where part of the conspiracy took place." *Garcia*, 772 F.3d at 1125. "[T]he presence of a firearm in a location where it could be used to protect drugs can be sufficient evidence to prove the requisite connection." *United States v. Young*, 689 F.3d 941, 946 (8th Cir. 2012) (alteration in original), *quoting United States v. Warford*, 439 F.3d 836, 844 (8th Cir. 2006). "The government need not show that the defendant used or even touched a weapon to prove a connection between the weapon and the offense." *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000).

Voelz sold meth four times at his farmstead. Twenty firearms and a pipe bomb were located near drugs and drug paraphernalia. At least two of the purchases occurred in the shed where three firearms and the pipe bomb were stored. The garage, where most of the meth was stored, had a safe with 15 firearms within 10 feet of the drugs. All 20 of the weapons on the property were near drugs or drug paraphernalia. Police knew about the weapons only because the CRIs saw the weapons during the controlled purchases.

The firearms and pipe bomb were "found in the same location[s] where drugs or drug paraphernalia were located and part of the [offense] took place." *Garcia*, 772 F.3d at 1125. The government adduced sufficient evidence of "a temporal and spatial nexus among the weapon, defendant, and drug-trafficking activity." *Escobar*, 909 F.3d at 240. The government here hurdled the "very low bar" for enhancement. *Garcia*, 772 F.3d at 1125.

Voelz argues that the enhancement should not apply because the firearms in the garage were locked in the safe. But the weapons in the shed, where at least two of the four controlled purchases occurred, were not in a safe—which independently supports the enhancement. Even without independent evidence, the locked garage safe might support the enhancement. *See United States v. Anderson*, 618 F.3d 873, 880-81 (8th Cir. 2010) (finding a nexus between a handgun and drug-trafficking activity where the handgun was locked in a safe that was locked inside of a storage unit); *Brown v. United States*, 169 F.3d 531, 533-34 (8th Cir. 1999) (finding a nexus between firearms and drug-trafficking activity where the drug-trafficking activities occurred in the basement and the firearms were locked in a safe on the first floor with drug money).

Voelz stresses he had legitimate purposes for possessing the firearms. But this does not affect the analysis. *See United States v. Belitz*, 141 F.3d 815, 818 (8th Cir. 1998) ("Nor is the fact that [defendant] allegedly possessed the gun for a legitimate purpose controlling."); *United States v. Newton*, 184 F.3d 955, 958 (8th Cir. 1999) ("The use or intended use of firearms for one purpose, however, even if

lawful, does not preclude their use for the prohibited purpose of facilitating the drug trade, and therefore does not automatically remove them from the purview of section 2D1.1(b)(1).").

It is not clearly improbable that the weapons were connected to Voelz's drug offense. *See Garcia*, 772 F.3d at 1125. The district court properly applied the two-level enhancement under U.S.S.G. § 2D1.1(b)(1).

## III.

Voelz argues that the district court erred by denying safety-valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. "This court reviews the interpretation of 18 U.S.C. § 3553(f) de novo. The district court's factual findings on safety-valve eligibility are reviewed for clear error." *United States v. Foote*, 705 F.3d 305, 306 (8th Cir. 2013).

"Safety-valve relief allows the district court to disregard an applicable statutory minimum if certain requirements are met." *United States v. Barrera*, 562 F.3d 899, 902 (8th Cir. 2009), *citing* **18 U.S.C. § 3553(f)**. "The Guidelines reflect this statutory provision." *United States v. Ruacho*, 746 F.3d 850, 853 (8th Cir. 2014), *citing* **U.S.S.G. § 5C1.2**. Under that provision "less knowledgeable and less culpable offenders may be able to avoid application of the often harsh statutory minimum sentences if they give full and truthful information about their offenses before sentencing." *United States v. Alvarado-Rivera*, 412 F.3d 942, 944 (8th Cir. 2005) (en banc). "The statute creating the safety valve provides that it is the district court which is to determine at sentencing whether the requirements for the benefit have been met . . . ." *Id.* at 947, *citing* **18 U.S.C. § 3553(f)**. "Defendants have the burden to show affirmatively that they have satisfied each requirement for the safety valve . . . ." *Id.* One requirement is:

. . . .

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

. . . .

**18 U.S.C. § 3553(f)(2)**. *See also* **U.S.S.G. § 5C1.2(a)(2)** (same).

The issue is whether Voelz "possess[ed] a firearm or other dangerous weapon . . . in connection with the offense." **18 U.S.C. § 3553(f)(2)**. As discussed, the § 2D1.1(b)(1) enhancement applies here. "Our conclusion that the increase under § 2D1.1(b)(1) was proper dictates our conclusion that [defendant] was ineligible for the 'safety valve' provision under § 5C1.2(2)." *United States v. Moore*, 184 F.3d 790, 795 (8th Cir. 1999), *citing United States v. Smith*, 175 F.3d 1147, 1149 (9th Cir. 1999) ("Every circuit to consider the issue has held that conduct which warrants an increase in sentence under § 2D1.1(b)(1) necessarily defeats application of the safety valve."). *But see United States v. Nelson*, 222 F.3d 545, 550 (9th Cir. 2000) (holding "separate and distinct burdens of proof for § 2D1.1(b)(1) and § 5C1.2 are not inconsistent with [the Ninth Circuit's] opinion in *Smith* and the cases upon which it relied"). Because Voelz's sentence was properly enhanced under U.S.S.G. § 2D1.1(b)(1), he is ineligible for safety-valve relief. *See Moore*, 184 F.3d at 795.[2]

Citing an Eleventh Circuit case, Voelz argues that a defendant who receives U.S.S.G. § 2D1.1(b)(1) enhancement should not be precluded from safety-valve relief. *See United States v. Carrasquillo*, 4 F.4th 1265, 1272 (11th Cir. 2021). That court explained that "not all defendants who receive the firearm enhancement under

_____

[2]An exception to this general rule is irrelevant here. *See United States v. Delgado-Paz*, 506 F.3d 652, 655-56 (8th Cir. 2007) ("[T]he circuits are unanimous in holding that possession of a weapon by a defendant's co-conspirator does not render the defendant ineligible for safety-valve relief unless the government shows that the defendant induced the co-conspirator's possession." (citations omitted)).

U.S.S.G. § 2D1.1(b)(1) are precluded from relief under § 5C1.2(a)(2)" because "a defendant who receives a § 2D1.1(b) enhancement must show that it is *more likely than not* that the possession of the firearm was not in connection with the offense." *Id.* (emphasis added), *citing **United States v. Carillo-Ayala***, 713 F.3d 82, 91 (11th Cir. 2013). *Carrasquillo* is not persuasive. Unlike the Eleventh Circuit, this court's clearly-improbable standard precludes safety-valve relief for a defendant with a sentence enhanced by U.S.S.G. § 2D1.1(b)(1). *See **Moore***, 184 F.3d at 795. *See generally **Mader v. United States***, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.").[3]

Regardless, sufficient evidence supports the conclusion that Voelz possessed the weapons in connection with the offense. "[C]onstructive possession is sufficient to preclude a defendant from receiving safety valve relief under § 5C1.2." ***United States v. Jackson***, 552 F.3d 908, 910 (8th Cir. 2009). *See generally **United States v. Warford***, 439 F.3d 836, 844 (8th Cir. 2006) ("A defendant possesses a firearm 'in connection with' an offense if the evidence shows that the weapon 'facilitated or had [the] potential to facilitate' the drug offense." (alteration in original)), *quoting **United States v. Burke***, 91 F.3d 1052, 1053 (8th Cir. 1996). The 20 firearms and pipe bomb on the property, including the three weapons in the shed and 15 firearms in the garage, were all near drugs or drug paraphernalia. At least two of the controlled purchases took place in the shed where the firearms and pipe bomb were located. The CRIs saw the weapons during the controlled purchases. At a minimum, Voelz constructively possessed some of these weapons in connection with the drug offense.

---

[3]*See, e.g., **United States v. Ruiz***, 621 F.3d 390, 397 (5th Cir. 2010); ***United States v. McLean***, 409 F.3d 492, 501 (1st Cir. 2005); ***Smith***, 175 F.3d at 1149. *But see, e.g., **United States v. Bolton***, 858 F.3d 905, 914 (4th Cir. 2017), *citing **United States v. Carillo-Ayala***, 713 F.3d 82, 91 (11th Cir. 2013); ***United States v. Anderson***, 452 F.3d 87, 90 (1st Cir. 2006); ***United States v. Zavalza-Rodriguez***, 379 F.3d 1182, 1188 (10th Cir. 2004); ***United States v. Bolka***, 355 F.3d 909, 914 (6th Cir. 2004); ***Nelson***, 222 F.3d at 549-51.

The district court did not clearly err in finding Voelz ineligible for safety-valve relief because enhancement under U.S.S.G. § 2D1.1(b)(1) was proper. *See Moore*, 184 F.3d at 795.

IV.

Voelz argues that placing the burden of proof of the safety-valve requirements on him violates the Fifth and Sixth Amendments because (i) the requirements are elements of the charged offense that the government must prove beyond a reasonable doubt and (ii) a judicial finding of safety-valve requirements violates *Alleyne* by affecting mandatory minimum sentences. *See Alleyne v. United States*, 570 U.S. 99, 108 (2013). But since Voelz did not make this objection in the district court, "he has failed properly to preserve the issue for appeal." *United States v. Payne*, 81 F.3d 759, 764 (8th Cir. 1996) (claim as to constitutionality of sentencing enhancement statute not raised below was not properly preserved for appeal); *United States v. White*, 890 F.2d 1033, 1034 (8th Cir. 1989) (same).

Because Voelz "did not assert this as an error below, this argument is reviewed for plain error." *United States v. Porchay*, 533 F.3d 704, 708 (8th Cir. 2008).

> Plain error review is governed by the four-part test of [*United States v. Olano*, 507 U.S. 725, 732-36 (1993)], as articulated in [*Johnson v. United States*, 520 U.S. 461, 466-67 (1997)]: "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."

*United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc), *quoting Johnson*, 520 U.S. at 466-67.

This court, like five other circuits, has held that "the requirements of *Alleyne* do not apply to a district court's determination of whether the safety valve provided

-8-

in 18 U.S.C. § 3553(f) applies." **United States v. Leanos**, 827 F.3d 1167, 1170 (8th Cir. 2016). *See also **id.*** at 1169 ("Five of our sister circuits have addressed this specific issue, and all five have declined to extend *Alleyne* in the manner that [defendant] proposes." (citations omitted)). Unlike the statute in *Alleyne*, the safety-valve statute "does not increase the mandatory minimum; instead, it removes it." **United States v. King**, 773 F.3d 48, 55 (5th Cir. 2014) ("Indeed, throughout the opinion, *Alleyne* emphasizes the aggravating nature of increasing a mandatory minimum sentence. In contrast, the safety valve at issue here *mitigates* the penalty."). *See also **United States v. Lizarraga-Carrizales***, 757 F.3d 995, 999 (9th Cir. 2014) ("[T]he safety valve does not come into play until the sentencing judge determines that a mandatory minimum applies. . . . the denial of safety valve relief does not increase the statutory maximum or minimum such that *Alleyne* is implicated.").

Although Voelz acknowledges this precedent, he claims that *United States v. Haymond*, 139 S. Ct. 2369, 2377-80 (2019) (plurality opinion), compels this court to reconsider *Leanos*. *See generally **United States v. Taylor***, 803 F.3d 931, 933 (8th Cir. 2015) ("[A] prior panel ruling does not control when the earlier panel decision is cast into doubt by an intervening Supreme Court decision."). The Supreme Court in *Haymond* invalidated a statute that required a minimum sentence of five years *if* a judge finds, by a preponderance of the evidence, that a sex offender on supervised release possessed child pornography. *See **Haymond***, 139 S. Ct. at 2378.

The Ninth Circuit has rejected Voelz's argument. *See **United States v. Cole***, 843 Fed. Appx. 886, 887-88 (9th Cir. 2021) (unpublished). The district court there declined safety-valve relief under 18 U.S.C. § 3553(f). The defendant appealed, arguing that, in light of *Haymond*, "§ 3553(f) unconstitutionally relieves the government of having to prove to a jury facts triggering an increased minimum sentenced." **Id.** at 888. The Ninth Circuit disagreed:

> This argument conflates relief from an earned sentence with the elements of the crime underpinning that sentence. *Haymond* is readily

distinguishable, as it dealt with supervised-release violations resulting in new mandatory minimums without the violations having been proven to a jury. Here, however, the jury's findings authorized the sentence imposed, and the onus of establishing an entitlement to less time appropriately rested upon Cole.

*Id.* (citations omitted).

This court agrees with the Ninth Circuit that a judicial finding of safety-valve requirements does not implicate *Alleyne* and *Haymond* because the safety valve does not *increase* the legally prescribed range of allowable sentences. *See Haymond*, 139 S. Ct. at 2378 ("So just like the facts the judge found at the defendant's sentencing hearing in *Alleyne*, the facts the judge found here increased 'the legally prescribed range of allowable sentences' in violation of the Fifth and Sixth Amendments."), *quoting Alleyne*, 570 U.S. at 115. "This logic respects not only our precedents, but the original meaning of the jury trial right . . . . The Constitution seeks to safeguard the people's control over the business of judicial punishments by ensuring that any accusation triggering *a new and additional punishment* is proven to the satisfaction of a jury beyond a reasonable doubt." *Id.* at 2380 (emphasis added).

The district court did not commit plain error by following Eighth Circuit precedent and properly assigning the burden of proof for safety-valve relief on Voelz. *See Alvarado-Rivera*, 412 F.3d at 947 ("Defendants have the burden to show affirmatively that they have satisfied each requirement for the safety valve.").[4]

---

[4]Voelz makes a similar argument about the burden of proof for the dangerous-weapon enhancement discussed in Part II. Voelz waived this argument by not objecting to the burden of proof at sentencing. *See United States v. Price*, 851 F.3d 824, 826 (8th Cir. 2017) ("To preserve an error for appellate review, an objection must be timely and must clearly state the grounds for the objection. Errors not properly preserved are reviewed only for plain error."). There is no error, plain or otherwise, in a district court and this court following Eighth Circuit precedent. *See Mader*, 654 F.3d at 800 ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.").

V.

Voelz argues that the sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) and the safety-valve relief under 18 U.S.C. § 3553(f) are unconstitutional in this case after *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022).

The parties dispute the standard of review. The government proposes that, because Voelz did not present this issue to the district court, he has not preserved it for appeal, and this court should review for plain error. *See **Pirani***, 406 F.3d at 549 (en banc) ("An error by the trial court, even one affecting a constitutional right, is forfeited—that is, not preserved for appeal—'by the failure to make timely assertion of the right.'"), *quoting **Olano***, 507 U.S. at 731. Voelz counters that he was unable to properly preserve the issue because *Bruen* was not published until after he was sentenced.

But even if *Bruen* changed the relevant law, plain-error review still applies. *See **Pirani***, 406 F.3d at 549 ("The plain error principle applies even when, as here, the error results from a change in the law that occurred while the case was pending on appeal."). Again, to succeed on plain error review, Voelz must show: "(1) error, (2) that is plain, (3) that affects his substantial rights, and (4) that 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" ***United States v. Soto***, 62 F.4th 430, 434 (8th Cir. 2023), *quoting **Pirani***, 406 F.3d at 550. *See also **Olano***, 507 U.S. at 734 ("'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'").

This court previously held that the sentencing enhancement under § 2D1.1(b)(1) and safety-valve relief under § 3553(f) were constitutional after *District of Columbia v. Heller*, 554 U.S. 570 (2008), which held the Second Amendment "to confer an individual right to keep and bear arms." ***United States v. Jacobson***, 406 Fed. Appx. 91, 93 (8th Cir. 2011) (unpublished). *Jacobson* relied on the cautionary language from *Heller* "that 'nothing in [its] opinion should be taken to cast doubt on

longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.'" *Jacobson*, 406 Fed. Appx. at 93 (alteration in original), *quoting* *Heller*, 544 U.S. at 626-27. *See also* *United States v. Humphrey*, 753 F.3d 813, 818 (8th Cir. 2014) (holding that defendant cited "no authority demonstrating 'clear or obvious error' that would support a claim of plain error on appeal" because *Heller* did not "cast doubt on the constitutionality of felon-in-possession statutes"), *citing* *Jacobson*, 406 Fed. Appx. at 92.

*Bruen*, like *Heller*, did not address either sentencing guideline—the dangerous-weapon enhancement or the safety-valve statute—at issue here. Instead, assessing New York firearm restrictions, the Supreme Court established the standard for reviewing Second Amendment challenges:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2129-30, *quoting* *Konigsberg v. State Bar of California*, 366 U.S. 36, 50 n.10 (1961).

*Bruen* did not hold, and this court has not interpreted it to hold, that U.S.S.G. § 2D1.1(b)(1) and 18 U.S.C. § 3553(f) are unconstitutional. Voelz cannot demonstrate an error, let alone a plain error, in the district court's application of the statutory enhancement and denial of safety-valve relief. *Cf.* *United States v. Avila*, No. 22-50088, 2022 WL 17832287 at *2 (5th Cir. 2022) (declining, after *Bruen*, to hold 18 U.S.C. § 922(n) unconstitutional because "survey[ing] the historical pedigree of similar laws and . . . adopt[ing] the defendant's interpretation of that history, thereby disagreeing with several other federal courts that confronted the

issue post-*Bruen*. . . . is not consonant with a finding of plain error" (citations omitted)); *United States v. Thompson*, 62 F.4th 37, 43 (1st Cir. 2023) (applying a similar miscarriage-of-justice standard of review under First Circuit case law to a *Bruen* challenge, which failed because "[i]t is far from *clear* that § 2K2.1(b)(4)(B) is unconstitutional" (emphasis added)).

The historical inquiry required by *Bruen*—a demonstration that the challenged regulations are consistent with the Nation's historical tradition of firearm regulation—exceeds plain error review, which looks for errors that are plain, clear, or obvious.[5] "Without any—much less controlling—authority to support [defendant's] claim, we cannot conclude the district court committed an error which was 'obvious' or 'clear under current law.'" *Jacobson*, 406 Fed. Appx. at 93, *quoting United States v. Pazour*, 609 F.3d 950, 953-54 (8th Cir. 2010) ("Because our review of the Sentencing Guidelines and relevant precedent did not uncover any authority clearly and obviously supporting [defendant's] position, and because at least one case arguably supports the government's position . . ., we conclude the district court did not commit plain error in applying the two-level enhancement . . . .").

_____

[5]Even if this court conducted a *Bruen* historical inquiry, it is doubtful that U.S.S.G. § 2D1.1(b)(1) and 18 U.S.C. § 3553(f) are inconsistent with the Nation's historical tradition of firearm regulation. *Cf. Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) ("'[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . .'" (alteration in original)), *quoting Heller*, 544 U.S. at 626; *United States v. Gonzalez*, No. 22-1242, 2022 WL 4376074 at *2 (7th Cir. 2022) (holding 18 U.S.C. § 922(g)(1) constitutional post-*Bruen* because the Seventh Circuit was "aware of no authority supporting an argument that someone [convicted of attempted murder] historically had the right to possess a gun"); *Range v. Attorney General United States*, 53 F.4th 262, 273 (3d Cir. 2022) (holding 18 U.S.C. § 922(g)(1) constitutional post-*Bruen* because "review of the historical record supports the Supreme Court's understanding: Those whose criminal records evince disrespect for the law are outside the community of law-abiding citizens entitled to keep and bear arms"), *vacated, reh'g granted en banc*, 56 F.4th 992 (2023).

Voelz fails to show that the district court's application of the statutory enhancement and denial of safety-valve relief were errors, let alone plain errors.

* * * * * * *

The judgment is affirmed.

KELLY, Circuit Judge, concurring.

I agree the evidence is sufficient to support the district court's conclusion that Voelz possessed weapons "in connection with the offense" such that he is precluded from receiving safety-valve relief. USSG § 5C1.2(a)(2). But I see no need to state categorically that a § 2D1.1(b)(1) sentencing enhancement automatically disqualifies a defendant from safety-valve relief under § 5C1.2. True, conduct that triggers the enhancement will in many cases also preclude safety-valve relief. But the two provisions set out two distinct standards, and I would not collapse the one into the other.

I otherwise concur in the court's opinion.

_____